Welcome to the Court of Appeals, 4th Circuit. We're pleased to have the Zahnstein students and undergrad and law students from William & Mary. It's always a pleasure to have our citizens of the future who will be determining matters of this sort to come and be with us. The first case we will hear for argument will be the Morva v. Zook case. We'll hear from the appellants. John Sheldon Good morning. John Sheldon for William Morva. I plan to address Issue 1 today, the State Court's refusal to appoint a risk assessment expert. The Commonwealth's case for death rested primarily on a prediction that William Morva would be a future danger in prison. The Commonwealth presented evidence of Morva's behavior in the community and his behavior in the jail, and then argued that because of that behavior and because of his intelligence and because of his mental illness, he was too dangerous to allow to live in prison. He would kill again if he were put in prison. And Morva's only reasonable way to respond was with an expert that could provide evidence that the real likelihood of Morva committing a serious act of violence in prison was exceedingly low. Now, the government or the Commonwealth did not present any evidence on that question, did it? The government presented evidence of his behavior in the community, his behavior in the jail, and argued from that behavior that the jury could make a prediction of his future violence in prison. Well, I guess my point is that the government did not present the kind of evidence that you wish to specifically rebut. That's right. The government did not present the same evidence that Morva wanted to present. Just like in Skipper, the government did not present the prison condition evidence or evidence of Skipper's behavior in prison, but Skipper was allowed to present witnesses, the U.S. Supreme Court said, about his behavior in prison. And just like in Simmons, where the government didn't make any argument about parole or that he'd get released, but Simmons was still allowed a due process right to rebut the argument of future dangerousness. So there is no rule that the defendant must use the same evidence that the Commonwealth uses to rebut an argument for future dangerousness. With respect to the parole issue, that case, it seemed to me, was the sui generis in the sense that there was a real danger that the jury could misunderstand exactly what the circumstances were of the defendant's likelihood of being released. It doesn't seem to me we have that same potential for confusion here. There was a huge potential for confusion in this case. Well, didn't you argue that, or not you per se, but the counsel argued in rebuttal, in argument that the fact that the defendant would be confined meant that he would not be a danger to society? Isn't that kind of intuitive from a layman's perspective, that that would make sense? Are you saying that the defendant argued that? Yes. He did argue that, but it is so counterintuitive that when one commits a murder, that they are less likely to be violent in prison in the future, and it's counterintuitive that one escapes from a jail. Remember, he was in jail for burglary, and he escaped. And the argument of the Commonwealth was that if you escape, and if you kill law enforcement, and now you're confined for the rest of your life in prison, what will happen to those correctional officers? He may kill again. And Morva needed evidence to rebut that very attractive argument. But the argument was not true. And, in fact, the crime that Morva committed in the community does not correlate to an increased likelihood of committing crimes in prison. Did you present evidence indicating he had good behavior in the jail? Are you asking whether Morva presented that? Did you present evidence that there was good behavior while he was in jail? Exactly. Just like Simmons was able to present evidence of his good behavior in the jail, and Morva did present evidence of his good behavior in the jail, and that was very helpful for his Eighth Amendment argument, and it was helpful in mitigation. Here's evidence that he behaved well after he escaped from the Montgomery County Jail. So you did have some opportunity to rebut in some way. Well, the evidence that he presented about his behavior in jail was not rebuttal evidence. It was really mitigation evidence. But it did not help him rebut the argument that if he were confined in prison for the rest of his life, based on his murder of law enforcement officers, based on his escape, he would actually be a very low risk at committing a serious crime. Let's make sure we're in the proper context of how this court is to consider your argument. Yes. And so procedurally walk us through, at least we're there in terms of this case has already been tried, gone to the Virginia Supreme Court, they've ruled against you on this. That's right. The U.S. Supreme Court denied you review, direct review, so now you're here on a habeas to us. That's right. And aren't we very limited in terms of how we now could proceed in granting relief in this case? You're limited by the AEDPA, right? So you're not limited to find that there's a constitutional error. But give me those limitations. Those are very important in terms of how we can view this evidence and what we must do. Well, I would say the first thing you have to do is evaluate was there a constitutional error. The same as the Supreme Court of Virginia was asked to do, the same as the district court was asked to do. And then you can't grant relief unless you find under 2254 D1 or D2 that the decision was either contrary to or an unreasonable application of law. Don't we have to find that the state's ruling here would have to be contrary to or an unreasonable application of clearly established law? Absolutely. That's what I have to convince you of in order for more of it to win. And in this case. The Supreme Court ruled in your way in any case like this? Simmons is almost directly on point to this case. Is that what you say, is on point? Simmons is almost directly on point. And one way you can see that. No, that's all right. So Simmons, I was going to ask, what in your opinion is your absolutely strongest authority for under AEDPA? Well, absolutely. Simmons would be because Simmons stands for the very clear proposition that where the prosecution relies on a prediction of future dangerousness in requesting death, that due process requires the admission of relevant evidence in rebuttal. And one way of seeing how clearly the Supreme Court of Virginia's decision not allowing this expert to testify the true facts that more of his chance of being violent in prison is exceedingly low is apply the Supreme Court of Virginia's rule to Simmons. The Supreme Court of Virginia's rule is that all evidence is irrelevant if it doesn't bear on a defendant's character, prior record, or the circumstances of the offense. If you apply that rule to Simmons, you wouldn't get a parole instruction. The rule in Virginia that you can only present evidence that bears on a defendant's character, prior record, or the circumstances of the offense is so clearly contrary to Simmons. And Simmons, of course, like Morver, was able to present evidence about his past behavior. But this is not a Simmons case. I mean, in Simmons, every effort was thwarted by the prosecution there. It's a far different case than this one, is it not? This case and Simmons are very similar in this way, that Simmons was able to present evidence of his past behavior in jail. He was able to present an expert who predicted what he would be like if he was committed to the Department of Corrections and that he would behave. And what Simmons couldn't do, what he couldn't do to complete his rebuttal of the argument that Simmons would be dangerous in prison, is he didn't have his parole instruction, his no parole instruction. The only thing missing from Morver was the expert who would have provided relevant evidence of his future behavior in prison. Morver had, like Simmons had, he had people who testified that he behaved in jail. Morver had a no parole instruction. So clearly, the jury knew that when they made a decision between life without parole or death, that Morver would be spending the rest of his life in prison. Is telling a jury that a life sentence in lieu of a death sentence is, under the law of state acts, without parole, is that a matter of evidence? Well, the rule in Simmons... That's your argument, right? If I understand it. You're saying that... My argument doesn't rely on the fact of whether the parole instruction is evidence. But I thought you just said that under Simmons, what you're arguing to us today is that your client was entitled to introduce evidence. That's right. And that's what gives rise to my question. But now you're saying Simmons didn't involve the admission of evidence. Well, Simmons did involve what Simmons needed to rebut the allegation of future dangerousness in prison. What Simmons needed was an instruction, an argument. But the holding... Which is not evidence. That's right. But the holding does use the word evidence. It does say evidence. And, of course, it also compares Simmons to Skipper and Gardner. Simmons literally says this is another instance of a state presenting evidence, an argument on future dangerousness, and a defendant's right to rebut. So perhaps the court would have been arguably more accurate, arguably, to use the word information rather than evidence. There is a point where they use the word information, but the rule that they ascribe to is that one has a right to relevant evidence. Of course this evidence is relevant. Every other state that uses the aggravator of future dangerousness allows this evidence. Every state has evidence. That doesn't mean that it's constitutionally required. That's right. It doesn't. It is interesting. You can't show not only that this ruling was incorrect, but that it was so far beyond the pale that no reasonable jurist could come to that conclusion. There's a distinction here, it seems to me, between evidence of parole eligibility, which is easy for a jury to wrap its arms around, and this kind of evidence, which is a little less distinct. And a judge could reasonably conclude that on the face of this evidence it would likely confuse rather than help the jury. That is exactly what the South Carolina State Court and Supreme Court said about parole. We're not going to allow parole instruction. This will just confuse matters. But no other state believes that evidence that an individual is going to be a low risk in prison in the future is confusing. It's just not confusing. The argument was made that he would be a high risk of committing serious acts of violence in the future. How is it confusing just to present the real truth, which is that he wouldn't be? Of course, what we have here is what's been called the G to I problem, right? Because what we're talking about is really just statistical evidence. This evidence wouldn't have told the jury anything about Mr. Morva. No. You disagree? Yes, I disagree. The evidence would have taken those characteristics of Mr. Morva that are predictive of future violence in prison. It would have taken his age. Based on the study of others similarly situated. Based on base rates. It would have taken his age, his criminal history, his education, his mental illness. It would have taken all his characteristics. And then, like any sound and valid prediction, would have used base rates. It's how any valid prediction of future dangerousness would have to go. That's not Simmons, though. That's right. Simmons is not. That's not what Simmons held when we're trying to determine that this is clearly established law. Simmons was very pointed. You had a prosecutor to bring in general evidence of dangerousness, future dangerousness, and then at the same time, keep the defendant at all costs from indicating that he would never get out on parole. The court says, well, you can't do that. You don't have that issue here because there's no question here the jury knows this defendant is not getting out on parole. So now you've gone to statistical analysis evidence for which an expert to be paid by the state would come in and testify about the statistical significance of age and education and other factors. A trial court in the discretion denied it. If he had allowed it, it would have been okay. If he didn't allow it, it's okay. Because it's a discretionary call, as Judge Davis has pointed out. So why is this case, what makes this clearly established? Because Simmons clearly does not do it unless we're going to extend Simmons beyond what the holding was. Well, I would not say it's extending Simmons. It may be that it's an unreasonable application of Simmons to Morva. I would argue it's contrary to the rule in Simmons. The rule really in Simmons is that when the state seeks death and based on future dangerousness, you have a right to rebut that. Let's make sure we get the language right. It must be clearly established law. And I want to make sure we're not saying the same thing. It sounds the same, that it's contrary to Simmons, which means that maybe it goes against the spirit of Simmons. But I'm not sure that makes it clearly established law. It's clearly established from the line of cases of Gardner and Skipper and Simmons. And Simmons said Gardner and Skipper determined this outcome, and the rule is that you have a right to rebut with relevant evidence. Remember, in Simmons, they did have an expert who evaluated Simmons and who opined on his chance of future dangerousness in prison and said it's exceedingly low. He had what Morva wanted. So Simmons had everything except what he really needed to complete his right to rebut, a no-parole instruction. Now, Morva had the parole instruction, but what he needed to complete his right to rebut. And remember, this is the truth. The truth is that Morva, his chance of committing a violent act in prison is exceedingly low, but he wasn't able to present that because he didn't have the evidence. I'd like to reserve the rest of my time for rebuttal. Thank you. Thank you. We'll hear from the government side of the case. Good morning. May it please the Court, Alice Armstrong on behalf of the warden. Your Honors, I think that the Court has actually landed on the precise legal point that's before this Court, and that is that federal habeas corpus is not available to a state prisoner unless he shows that the state court's disposition of his claim was contrary to or unreasonable application of clearly established federal law. He says Simmons is clearly established law, and it is, without extending it, that to hold otherwise is contrary to Simmons. I heard him say that, and I also heard him say it's very similar to Simmons. And the Supreme Court of the United States has, in a recent series of cases, White v. Woodall, Howe v. Fields, and Woods v. Donald, made very, very clear in rather emphatic language that similar to does not carry the day. That if the Supreme Court has not confronted the precise question presented, and in a holding, rather than in dicta or the explanation, in a holding has not announced the constitutional categorical right upon which the petitioner relies, then whatever the state court's disposition was cannot be contrary to. Well, I guess it depends on how specific you want to drill down to the question because clearly the defendant has a right to present evidence in mitigation to rebut the state's capital sentencing argument. So the question is, is it required for the Supreme Court to find specifically that this type of evidence is admissible? And if so, how do you ever get to that question? Well, I think there really are two concurrent things going on in this case. But the claim that was presented to the state court was, I was denied my right, couched in constitutional terms, but I was denied my right to an expert to present this specific sort of evidence. And the Supreme Court of the United States has never held that an indigent defendant is entitled to the appointment of anything other than an expert psychiatrist. And even in that circumstance, only when the mental health or the question of the defendant's mental health is going to be a substantial issue in the case. Now, that happened in this case. He had the appointment of an expert psychiatrist, and in fact he also had the appointment of the neuropsychologist to conduct the testing. But the Supreme Court in Skipper and in Simmons did emphasize the importance of being able to present mitigating evidence by the defendant. It did, and I would say that in Skipper, in Aki, in Lockett v. Ohio, the Supreme Court has never said that simply because the defendant himself labels something mitigating evidence that he has an unfettered right to put on whatever he wants to. All of those cases, including the language that was just cited from Simmons, talk about relevant evidence, which is a matter of state law. And the Supreme Court recognized that in Lockett, and there's actually a caveat in Aki itself that says when permitted as a matter of state law or when permitted as a matter under the rules of evidence. So there's always been that caveat that it must be relevant. Frankly, that's in some ways the most troubling aspect, one of the most troubling aspects of this, for me at least, to call it irrelevant seems to me to go a bit far. I mean, the Commonwealth of Virginia's evidence rules may not be exactly like the federal rules or other states, but, I mean, relevant is a very expansive and generous legal concept, right? And under the federal rules, there's a presumption of admissibility, essentially, and evidence that's relevant is admissible unless it's irrelevant. And so this was not a case where the Virginia Supreme Court said under a 403 type of balancing the district judge, the trial judge didn't exclude the evidence in the exercise of a sound discretion to avoid complications. The court, I think, if I'm reading it correctly, said it's irrelevant, which essentially says even in future cases, the trial judges in Virginia essentially would be prohibited from admitting this evidence. Do I have all of that right? I don't think that the holding was as expansive as that. Okay. And I think we need to unpack it a little bit, though, because the claim was I was entitled to this expert. Well, under AICI, he was not entitled to that particular expert. And because there is not a constitutional right to that expert, and the court has never held that there is. So that takes me to my next series of questions, and I'm sorry to interrupt. But is it your argument that under the AICI doctrine, unless and until the Supreme Court, case by case by case by case by case says, yes, you're entitled to this type of expert, yes, you're entitled to this type of expert, it's hard for me to believe it's actually your argument that clearly established law would require the Supreme Court of the United States to grant cert in a direct appeal from a federal trial or a state trial and actually say, yes, you're entitled to a ballistics expert. Yes, you're entitled to a psychiatric expert. That's what we held in AICI. Yes, you're entitled to an expert on geophysical characteristics of the crime scene. I'm not sure, as Judge Diaz says, you've got to get specific, but do you really need to get that specific? Well, I think under the recent cases on Woods and Fields that we do have to be pretty specific, that the criticism of the circuit court in those cases was that the analysis was conducted at too high a level of generality. And in response to, is AICI really that limited, I would say, yes, under Caldwell v. Mississippi, it is. And until the court decides to take up another expert or a class of experts, there is not a constitutional command that the defendant is entitled to anything other than a psychiatric expert. And so what the Supreme Court of Virginia then said was it's not a constitutional command under AICI. We understand, and they addressed Simmons and Skipper and Gardner. I mean, this is not a situation where the court did not identify the controlling legal principles that defined the contours of the debate, if you will. They cited, recited accurately the holdings of all of these cases. What if Morva in this case had simply called a corrections official to the stand to testify as to the circumstances of his future confinement without opining as to future dangerousness? Would that be relevant? Under the Supreme Court of Virginia's precedence is that he's not permitted to present general evidence of prison conditions. That's a longstanding precedent, Cherricks, Burns, and Porter. Essentially, isn't that what Morva was attempting to do here? Well, that's exactly what he was attempting to do. And what the Supreme Court of Virginia said, and maybe I can tie back to the point that I was hoping to make here, is because AICI does not control, we will look to state precedent. And under state precedent, he can get other experts if he shows a particularized need. He could not make that showing in this case because as a matter of state law, he's not permitted to present evidence of general prison conditions in the first instance. It is recognized that if the Commonwealth opens the door to that, then he is permitted to present evidence of prison conditions in rebuttal if the Commonwealth raises that. The Commonwealth's argument didn't raise that here. The Commonwealth's argument was geared to the offense he actually or offenses he actually had committed in this case, the reason he was before the court. So without the constitutional right to the expert, we pivoted to the state right to the expert, and as a matter of state law, it was not permitted. But didn't the Commonwealth also argue that he had escaped once before? There's no guarantee that he could not do it again? Well, I don't remember the precise. Go ahead, I'm sorry. No. Go ahead. I don't remember the precise contours. I know the argument was it would be a shame. It would be wrong if that happened again. Well, that's certainly implying the possibility that that could happen, and so why wouldn't Mora be able to rebut that evidence by showing, hey, under the circumstances under which I'm going to find myself in prison, that's not likely to happen? Well, I think he did rebut that because he brought not a lay witness, not like in Skipper, not a lay witness. He brought the captain of the regional jail that he had been confined in for approximately a year, maybe a bit more, from the time of these offenses until the time of the trial. He says that wasn't rebuttal evidence. I'm sorry? He says that wasn't rebuttal evidence. Well, I think it addresses the question of how he would behave in the future because we had a year's worth of evidence or behavior post these crimes that showed that he could be put in circumstances where he was compliant. Could he have introduced evidence showing that if it's true, and I don't know whether it's true, showing that since Virginia reinstated the death penalty, no defendant who did not get the death sentence from a jury had ever escaped or committed a homicide, going back now 50 years? I don't know, Your Honor. Well, it wouldn't have been 50 years at this time. I don't know. But then I think that raises a different question, which is if he put this on, could the Commonwealth then put on in sur rebuttal the fact that there has been an escape from death row? And there has been? The Briley brothers, yes, Your Honor. And I'd be happy to submit a 28-day letter. And I know of someone who ultimately did receive the death sentence under the prisoner status who killed another inmate in the Supermax. You said escape from death row. Escape from death row. No, my question was someone who did not receive the death sentence. I don't know those statistics, Your Honor. I can try to find those if that pleases the Court. No, I'm not going to ask you to spend any time researching that. Okay. But what I would say is that there is not a Supreme Court of the United States holding that establishes the categorical rule he's asking for here, which is he's entitled to an expert on these other points. The Supreme Court of the United States has never held that. In other words, the question is whether cases out there that have confronted the specific question, the language that was used in the Woods case. Exactly. And there isn't. And that was the point that we made on brief is that when you have to say, if I take some of this and some of this and some of this, then we get to this new principle. We're going to extend the legal principle. These principles apply to this situation. That's not clearly established. When you can't point to a holding of the Supreme Court of the United States that announces the categorical right upon which he's relying, then he cannot satisfy the contrary to clearly established law under 2254 D1. Two clear holdings taken together can't do it? I don't think so. Not under Woods and Fields. I mean, the language, I think, in White is perhaps the next logical step, right? And I think that applies here. Perhaps the next logical step of Skipper, Simmons, Gardner, et cetera, perhaps that is the next logical step, but that is a question for direct review. That is not a question for 2254 D1 review. And because it is not a question for 2254 D1 review. Of course, the court could do it under 2254, right, if it wanted to, because the limitations in EBPA don't apply to the Supreme Court. Well, I think that would implicate Teague nevertheless. Yes, and so although 2254 D1 – Under Teague, you can put two cases together, right? Under Teague – You can put two holdings together. The suggestion is that you can put two holdings together, but I don't know that the Supreme Court has actually ever approached the doctrine in that manner. But under – The case could give the court an opportunity to do both things. I don't know. I don't know what the court would do, but because we are in collateral review, I don't think they would because of the Teague doctrine because – and it ties right back to the same language of 2254 D1. At the time that the Supreme Court of Virginia was asked to pass upon the question, it was applying the law that the Supreme Court of the United States said applied at the time. And the reason for the Teague doctrine is we don't make the states marshal all the evidence repetitively every time the court finds a new right or announces a new rule because we don't, if you will, punish the states for doing it correctly at the time that they were asked to pass upon the question. You know, it just seems to me we're in a difficult situation yet. The Supreme Court has interpreted the law to indicate our review of this is very limited. And the recent cases of White and Woods, everything you've been arguing, you could have just read that boilerplate language straight from those cases. On the specific question must be presented, Woods stated. On the White case, it says it right there. If you've got to extend the rationale, that's by definition not clearly established. There may be an opportunity we wish we could go a different way, but basically the court's not saying you cannot use this evidence. What it's saying is you're not required to. And that's the key, is when the state court undertakes to do this, it's a discretionary call. So I'm, you know, I think we could, and probably it's good to look at to the efficacy of this and how it goes, but the U.S. Supreme Court has really, really narrowed this review on this. And I'm trying to struggle the way in which we in a way go beyond that and how does that apply differently than what we're dealing with here. And the only way we get it is that when we define this specific question and we're talking about mitigating evidence in terms of what is allowed in, then that can encompass maybe like parole evidence or whatever and expert testimony. But it does sound like it's a White extension of a rationale. It very much is. I would say it is. I would say that that line of cases, Woods, White, Fields. It's all new. I mean, it's not like it was 100 years ago. We're talking about the last couple of years. Exactly. And I would say that the Supreme Court has been, the word I use is emphatic, pretty emphatic about the limitation that that statute places on federal relief. So it's stricter than Teague, but I think that what we're talking about here actually would implicate Teague as well. But if we have to cobble things together, if we have to extend something, if we say the case is similar to even though the facts and the circumstances are a little different, I think under Woods that does not carry the day. Ms. Armstrong, Mr. Sheldon, I believe in his brief, pointed out that Virginia apparently stands alone in excluding this type of evidence. Is the fact that Virginia may be alone some indication that perhaps there's a constitutional problem here, or is it simply your position that Virginia got it right, the other states are out to lunch? It's not my position that anyone is out to lunch, but I think other states have, and I haven't surveyed whether they have claimed that that is a federal constitutional right that's being vindicated or simply a state constitutional right that's being vindicated. So the Supreme Court to date has left the states to sort out for themselves in their own way how to apply AICI other than in the circumstances of a psychiatrist, and different states are free to do different things when it's not a constitutional right. Here it is not. So I don't know that Virginia stands alone. I don't think that the Supreme Court of Virginia announced a categorical rule. In a state that does it, I mean, I understand you haven't done the survey, but you kind of know this case, and it probably would have been helpful if you'd known. If there had been 10 cases, you would have told us. Well, I am aware that Dr. Cunningham has testified in other cases in other states. He's testified in other cases in Virginia. So because there is not a categorical rule, I think that's part of the fallacy here. There's not a categorical rule. It's submitted to the sound discretion of the trial court. The Supreme Court of Virginia didn't say they were announcing a categorical rule here. They did essentially a case-specific analysis and said that the Crawford testimony was not specific to Morva. Now, we can agree or disagree whether they got that right or wrong, but it has to be an objectively unreasonable application of federal law. And so the submission is it's not an objectively unreasonable application of federal law because there isn't a clearly established precedent that the Supreme Court of Virginia got wrong. And I would be happy to address any questions the court has on the other two issues or submit on brief. And with that, Your Honors, we would ask that the court affirm the district court. Thank you for your argument, Ms. Armstrong. Mr. Shelton, you have a few minutes for rebuttal if you choose. Thank you. I'd like to address three points quickly. One, the ADPA. And I think, Judge Wynne, you're being a little too stingy in your view that this court doesn't have enough room to apply the clear rule in Simmons to this case. Because it's of value to us to help us to understand it better. I'm going to do my best, Your Honor. Please. So first, in Barnes v. Joyner, a 2014 case in this court, this court was faced with an ADPA question. It was a habeas case. And what had happened was a juror had consulted her pastor. And in state court, they didn't give the petitioner a hearing. And this court was faced with the same question. Is there clearly established law that we can apply in order to grant relief? Because in Remmer, the U.S. Supreme Court had said in a case in which a court officer had given some instructions to a juror, the U.S. Supreme Court said in that case, you need to give a hearing to that petitioner. Now, of course, in this court, the state argued those cases are different. Remmer was about a court officer giving information to a juror. The Barnes v. Joyner case was a case about a juror consulting her pastor. And they said that's applying a rule to a different set of facts. And this court said very clearly that the ADPA does not require state and federal courts to wait for some nearly identical fact pattern before a legal rule must be applied. The legal rule in this case that we're asking to be applied is clearly established, and it's very clear. State seeks death based on future dangerousness. You have a right to rebut with the limitation relevant evidence. This court said a state court's decision is an unreasonable application of clearly established federal law if the court identifies the correct governing legal rule from Supreme Court cases but unreasonably applies it to the facts of the particular state prisoner's case. It's not a reach to say that Simmons had testimony about his behavior in jail. Simmons had an expert testifying that he wouldn't be a future danger. Simmons didn't have the one thing he needed, a no parole instruction. Morva had the no parole instruction, had the testimony about his past behavior in jail. What he needed is the thing that Simmons had, but he didn't. He needed relevant evidence to rebut the argument of future dangerousness. There was also a question about can you put together a series of cases to come up with a rule, and the U.S. Supreme Court in Abdul Kabir v. Quarterman, 550 U.S., 233, that was a case, an ADPA case, where the majority said it was a Texas case where the mitigation evidence that was banned at trial was very different from Penry, and the U.S. Supreme Court looked at Penry, Teague v. Lane, Druid v. Texas. Johnson said, look, we've got a rule here. The broad rule is the jury must have a meaningful basis to consider relevant mitigating qualities of the defendant's proffered evidence, and even though Abdul Kabir's proffered mitigation evidence was very different from Penry's, the court said there's a rule from all these cases, and this fits under the rule. Morva clearly fits under the rule here. I also think there was a little mischaracterization of this as an ache case. This is not a case where the trial court had discretion and chose not to use it. This is a case where the trial court said the evidence is not relevant, so I'm denying your expert. If the court had said this expert is not qualified, if the court had said this expert is too expensive, this expert is from too far away, that would be a different case. But the judge did not have discretion to make those decisions because he was limited by this really, if you really look at it, it's a bizarre rule. It's a rule that says any prediction of future dangerousness is irrelevant. Of course, and I'm not sure if we put this case in our brief, the Supreme Court of Virginia has treated it very differently when the state has wanted to do that. In fact, in the case of Vinson, the- I thought I heard Ms. Armstrong say that this was not, that the Virginia Supreme Court did not purport to establish a rule that, as a matter of law, prohibited this type of evidence. It was simply unique to this circumstance. Is that correct? Absolutely not. It's a categorical rule that if the evidence, here's the rule, if the evidence is not bearing on the defendant's character, prior record, or circumstances of his offense, you cannot submit it. Of course, they have allowed the state to submit it in other cases, but it's a categorical rule that they applied in this case and they have applied in other cases. I see my time is up, if there are no more questions. Thank you, Mr. Shelton. Thank you. Mr. Shelton, the court wants to thank you, recognizing that you are a court opponent for this case. Thank you, Your Honor. Which is a great undertaking in terms of assisting this court. We thank you for your service this year.
judges: James A. Wynn, Jr., Albert Diaz, Andre M. Davis